Karlin v. Franciscan Sisterhood.

REINHOLD 'L. KARLIN, APPELLANT, V. FRANCISCAN SISTER-
HOOD OF NEBRASKA, APPELLEE.

FILED FEBRUARY 15, 1923.   No. 23062.

1. **Municipal Corporations:** SALE OF VACATED STREETS. When the charter of a city of the second class gives authority to the mayor and city council to sell vacated streets, a sale of such vacated streets by the city should not be set aside merely because the selling price may not equal the actual value, unless such selling price is so grossly inadequate as to raise a presumption that there was fraud, or that the mayor and council had not acted in good faith.

2. ———: ———: PRESUMPTION. Where a mayor and city council, acting within the scope of legislative authority, sell and convey a vacated street, their deed is presumed to be valid and to be based upon adequate consideration, and the party attacking it must by clear proof exclude the legal presumptions in favor of the official acts of such officers.

3. **Evidence** examined, and *held* not sufficient to show fraud or lack of good faith or abuse of discretion on the part of the mayor and city council in vacating and selling certain streets in Columbus to the defendant.

APPEAL from the district court for Platte county: A. M. POST, JUDGE. *Affirmed.*

*McElfresh & Walker,* for appellant.

*Albert & Wagner, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and GOOD, JJ., RAPER, District Judge.

RAPER, District Judge.

This action was commenced October 5, 1921, by plaintiff Karlin, as a taxpayer, and in his own right as a property owner, to enjoin the defendant Franciscan Sisterhood of Nebraska (and other defendants whom it will not be necessary to mention) from closing up and taking possession of certain streets alleged to have been illegally vacated and sold by the city of Columbus to said defendant.

The said defendant has been the owner for many years of blocks 3, 4, 12, and 13, Chambers addition to

Columbus; on block 12 a hospital is maintained. In 1910 the street between blocks 12 and 13 was vacated by an ordinance, and defendant at once took possession, built a brick barn thereon, and has since used same in connection with its hospital. Block 3 is north of block 12 and blocks 4 and 13 are east of 3 and 12. In September, 1920, the streets between blocks 3 and 4, and between 3 and 12, and between 4 and 13, were vacated by ordinances of date September 12, 1920, and of September 7, 1921. The plaintiff owned and lived upon property one block and across two streets east of the easternmost part of the vacated street. November 3, 1921, the city intervened claiming title to the vacated streets. In the latter part of December, 1921, the city, by ordinance duly passed, sold and conveyed the vacated streets to the defendant for $500, and after that the city filed a disclaimer and was dismissed out of the case. Plaintiff filed a supplemental petition setting up the sale of the vacated streets to the defendant and asking that it be canceled. Issues were joined, and at close of the hearing plaintiff was denied relief and the action dismissed.

Appellant bases his right to relief upon the following proposition, so far as need be considered: (1) That the vacation of the streets was induced by and solely resulted in private benefit to defendant, and was so done without providing for or paying damages to plaintiff and other property owners. (2) That the sale of the vacated streets was without adequate consideration and constituted a fraud upon the rights of plaintiff and other taxpayers. (3) That the vacation and sale of the streets to defendant was hasty and ill-considered; was done without regard to the rights of the taxpayers and property owners of the city, and was induced by the defendant for its own personal financial benefit, and did not benefit, the public or the city; and that said acts by the city council constituted an abuse of discretion of the mayor and council, and amounted to a fraud.

The testimony disclosed that the Franciscan Sister-
hood is one of the charitable orders of the Catholic
church and contemplates enlarging the existing hospital
to an extent that will require the expenditure of
probably $250,000 or more; that they receive patients
from all classes, and accept cases that are charges on
Platte and other neighboring counties, charging a weekly
sum to the counties, which is much less than the ordinary
hospital charge; that under the plans for the improve-
ments it will be necessary or urgently convenient to
place some of the new buildings on the block north of the
present hospital (on block 3) and to inclose the four
blocks and vacated streets with walls and fences, and
among other improvements is a contemplated building
to house and care for patients with contagious diseases,
and which the city and county can have the use of (not,
however, without compensation); and that the Sisterhood
use the money paid by patients who are financially able,
and donations from charitably inclined persons to pay
the operating expenses.

The plaintiff produced a witness who testified that
the value of the vacated lots which were sold to the
defendant was $2,000 and plaintiff offered testimony
that by the vacation there would ensue a large ex-
penditure to drain the adjacent streets; also, that the
plaintiff's property would be depreciated in value; how-
ever, the testimony as to extra cost of drainage was dis-
puted by testimony of defendant. It appears without
contradiction that plaintiff has outlet on other streets
than those vacated, but he testifies that, in going to
certain parts of the city, he will have to go a longer
route. Such, in brief, is the state of the record on the
more important facts.

The appellee insists that plaintiff has no standing
to maintain the action to enjoin the occupation of the
vacated streets, and because plaintiff, after the appeal
was taken, asked for a modification of the decree by
asking affirmative relief in retaxing costs, he is pre-

cluded from maintaining this appeal. In the view we take of the matter, it will be unnecessary to pass upon either of those objections; for this reason, if he does not show a right to the relief, then it matters not whether he is a proper party to maintain the suit, or to pursue the appeal. Upon consideration of all the evidence, we are impelled to hold that the district court's decree was right upon the main questions of fact.

Under the proofs appearing in the record, we are not able to say that the council acted arbitrarily, and abused the discretion vested in them by the statute, in vacating the streets, even though it may have resulted in benefit to the defendant. Such an institution as is maintained by the defendant has more than a mere personal pecuniary object. They are regarded as being of general benefit to the whole community, both city and surrounding country. To have a place where care can properly be bestowed upon the sick and afflicted, without regard to whether they are able to pay, is of itself sufficient proof that it does tend to help and improve the necessities and conveniences of the public at large. Perhaps with its enlarged capacity it may bring patients and their relatives, attendants and friends from a distance, and thus enchance the trade of the merchants and places of entertainment where food and lodging is furnished. These streets were near the outskirts of the city, and there is testimony which shows that these vacated streets never had heavy travel. All these matters, and perhaps others which the council may have had in mind, were no doubt considered, and there is not sufficient proof in the whole record to show that the council acted arbitrarily, or abused their discretion. To warrant the court in interfering with the action of a city council acting within the scope of their statutory authority, the evidence should be such as to show with reasonable certainty that their action could not be construed as having been taken with a view of the general public welfare. The principal question in

this case bearing upon the good faith of the city council and its power to act in vacating the streets seems to be that the defendant is the one solely benefited by the vacation. The case of *Village of Bellevue v. Bellevue Improvement Co.,* 65 Neb. 52, holds that, because the vacation was had at request and principally for the benefit of certain property owners, is not ground for declaring such vacation ordinance invalid.

The plaintiff's property does not abut upon the streets vacated, nor is the ingress and egress to his property interfered with. Under such circumstances he was not entitled to damages on account of such vacation. *Lee v. City of McCook,* 82 Neb. 26, and cases cited therein.

Lastly, as to the claim that the sale of the vacated streets by the city being for a grossly inadequate price, such sale should be declared void. One witness, as above stated, who was interested in same manner as plaintiff gave his opinion that the streets conveyed to defendant were worth $2,000. He appeared as an expert witness as to such value. The trial judge was not bound to accept the opinion of the witness. But it should be remembered, further, that the defendant was claiming a part of the vacated portion by adverse possession. As to whether or not such claim was valid we do not determine, yet the mere claim, enforced by the fact that defendant had erected a brick building on it and had been in possession for a number of years, no doubt would affect the market value. We may also infer that the mayor and members of the council, being residents, and no doubt more or less familiar with values of property, used their knowledge when the sale was ordered. Under these circumstances the finding of the trial judge should not be overturned.

The evidence not being sufficient to establish an abuse of the discretion of the city council, it is not necessary to pass upon the questions as to whether plaintiff was entitled to maintain the action. The

questions of law upon the main facts have been so repeatedly passed upon by this court that citations therefor are not needed.

The action of the district court in dismissing plaintiff's petition is right, and is

AFFIRMED.